UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**PATRICK LOUIS QUEREC,**

    **Plaintiff,**

v.                   Case No: **6:14-cv-983-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM OF DECISION

Patrick Louis Querec (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB"). Doc. No. 1; R. 176-177. Claimant alleges an onset of disability as of August 1, 2011, primarily due to degenerative disc disease, pain, muscle spasms in left lower extremity, non-Hodgkin's lymphoma, hypertension, arthritis, sleep apnea, hyperlipidemia, and insomnia. R. 78-79. Claimant argues that the Administrative Law Judge (the "ALJ") erred by: 1) finding his disorder of the spine does not meet or equal Listing 1.04; and 2) failing to consider the testimony of the vocational expert (the "VE") at step-four that an individual who is unable to pass a mandatory drug test due to prescribed narcotic medication would not be hired for Claimant's past-relevant work as a section chief. Doc. No. 34 at 14-16, 19-23, 34-36.[1] For the reasons set forth below, the Commissioner's final decision is **REVERSED AND REMANDED** for further proceedings.

---

[1] In the parties' Joint Memorandum on appeal, Claimant also argues that the ALJ erred in the handling of certain medical opinions (hereinafter "Issue No. 3") and by making a credibility determination without substantial evidentiary support. Doc. No. 34 at 26-41. On November 9, 2015, in response to an order from Court addressing Issue No. 3 (Doc. No. 35), the parties filed a Joint Notice, wherein Claimant withdrew Issue No. 3. Doc. No. 36 at 1. In the

I. **THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a). In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id.* at 1278 (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

II. **STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant

---

Joint Notice, the parties also state, "the issues for the Court to resolve should be narrowed <u>to only the first two issues discussed in the Joint Memorandum</u>." Doc. No. 36 at 1 (emphasis added). If the Court were to construe the Joint Notice literally, then issue number four, *i.e.*, that the ALJ's credibility determination is not supported by substantial evidence, would also be withdrawn from the Court's consideration. *Compare* Doc. No. 36 *with* Doc. No. 34 at 14-16 (issue no. 1), 19-23 (issue no. 2), 34-36 (issue no. 4). Given the history of the briefing in this case (*see* Doc. No. 35 at 1-4) and in an abundance of caution, the Court construes the Joint Notice as only withdrawing Issue No. 3. Nevertheless, because the case must be reversed with respect to issue no. 2, there is no reason to address issue no. 4.

evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'"  *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III.  ANALYSIS.

#### A.  Listing 1.04.

Claimant argues that the ALJ erred at step-three of the sequential evaluation process by failing to find that Claimant's impairments, singly or in combination, meet or medically equal the severity requirements of Listing 1.04 Disorders of the Spine.  Doc. No. 34 at 14-16.  Claimant maintains that the ALJ ignored evidence in the record, which meets the criteria for Listing 1.04.  *Id*. at 16.  The Commissioner argues that the Claimant failed to meet his burden to demonstrate that his impairments met or equaled the requirements of Listing 1.04.  Doc. No. 34 at 17-19.  The Commissioner maintains that the evidence Claimant cites to regarding nerve root compression is dated prior to Claimant's alleged onset date and that recent objective studies and treatment notes, which occurred during the relevant period, do not meet or equal the Listing.  Doc. No. 34 at 18.  Moreover, the Commissioner asserts that the record fails to show positive straight leg raising test,

which is a requirement under Listing 1.04A.  Doc. No. 34 at 19.  Thus, the Commissioner maintains that the Claimant failed to meet his burden at step-three and, therefore, the ALJ's decision is supported by substantial evidence.  Doc. No. 34 at 19.

At step-three of the sequential evaluation process, the ALJ must consider whether a claimant's impairments, individually or in combination, meet or equal any of the Listing under 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  By meeting a listed impairment or otherwise establishing an equivalence, a claimant is presumptively determined to be disabled regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1520(d); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).  A claimant is entitled to an award of benefits if the claimant can demonstrate that his or her limitations meet, or are medically or functionally equal to the limitations set forth in the particular listing contained in Appendix 1.  *See Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1282 (11th Cir. 2004).

The claimant bears the burden of demonstrating that his or her impairments meet or functionally equal a listed impairment, and the claimant must come forth with evidence of the medical signs, symptoms, and/or objective testing that meet all of the listing's respective requirements.  *See Zebley*, 49 U.S. at 530.  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id*.  Moreover, at step-three, "[w]hile Appendix 1 must be considered in making a disability determination, [the ALJ] is not required [to] mechanically recite the evidence leading to [his or her] determination" and, therefore, an ALJ's finding that a claimant does not meet a particular listing may be implicit in the ALJ's decision.  *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).

Listing 1.04 for Disorders of the Spine provides the following criteria:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulpous, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc

>disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
>or
>
>B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
>or
>
>C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P. App. 1. Thus, in order to meet Listing 1.04, a claimant must come forth with evidence supporting all the criteria contained in 1.04A, 1.04B, or 1.04C. For example, with respect to Listing 1.04A, a claimant must demonstrate that he or she has a recognized disorder of the spine, which results "in compromise of a nerve root . . . or the spinal cord" with "[e]vidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss <u>and</u>, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id*. (emphasis added).

In the decision, at step-two, the ALJ found that Claimant has the following severe impairments: "L4-5 status-post surgery, L5-S1 status-post surgery, mild facet arthropathy bilaterally that resulted in mild foraminal narrowing, L3-4 disc desiccation and mild facet

arthropathy that resulted in mild foraminal narrowing bilaterally, and polyneuropathy." R. 16. At step-two, the ALJ provides a good review of the medical record related to Claimant's degenerative disc disease and polyneuropathy from the Claimant's alleged onset date – August 1, 2011, through the March 13, 2013. R. 16-18. *See also* R. 1042-1043, 1078, 1091-1096, 1098, 1101-1102, 1108, 1111-1116, 1122, 1124-1140, 1143, 1146-1148, 1150, 1152-1153, 1155-1156, 1162-1163, 1220-1228, 1232-1233, 1242-1247, 1249, 1275-1276 (medical record addressed by ALJ). Generally, the ALJ's review of the medical record at step-two shows that while Claimant's back impairments and neuropathy are severe with chronic pain, radiculopathy, and some loss of sensation in Claimant's lower left extremity, the Claimant's physical examinations are largely benign; with no positive straight leg tests during the relevant period, only one finding of antalgic gait (R. 1249), which resolved by the following appointment (R. 1246-1247), and no objective tests indicating nerve root compression or stenosis (R. 1232-33, 1242-43). R. 16-18. *See also* R. 1042-1043, 1078, 1091-1096, 1098, 1101-1102, 1108, 1111-1116, 1122, 1124-1140, 1143, 1146-1148, 1150, 1152-1153, 1155-1156, 1162-1163, 1220-1228, 1232-1233, 1242-1247, 1249, 1275-1276.[2]

At step-three, the ALJ specifically considered whether Claimant met the criteria for Listing 1.04. *See* R. 20. The ALJ found that: "The claimant has L4-5 status-post surgery, L5-S1 status-post surgery, mild facet arthropathy bilaterally that resulted in mild foraminal narrowing bilaterally, and polyneuropathy, but is not degenerative in nature as to meet or equal 1.04." R. 20. Substantial evidence supports the ALJ's finding (*see supra* p. 6) and the Court finds that the

---

[2] Prior to the Claimant's alleged onset date, the record shows that Claimant did suffer from herniated discs that resulted in compression of the nerve roots, positive straight leg raising tests, difficulty ambulating, and spinal stenosis. *See* R. 313 (June 10, 2009 MRI); 329-330 (positive straight leg test on the left leg, difficulty ambulating); 337-338 (same); 445 (December 9, 2008 CT scan showing spinal stenosis). However, those issues were addressed by surgery. *See* R. 1165 (February 24, 2010 treatment note releasing Claimant to light duty work following surgery).

Claimant has failed to come forth with evidence in the record demonstrating that the Claimant meets each of the criteria in Listing 1.04A, 1.04B, or 1.04C. Accordingly, the Claimant has failed to meet his burden at step-three and the Claimant's argument is rejected.

### B. Impact of Prescription Narcotics on Past-Relevant Work.

Claimant argues that the ALJ erred at step-four by determining that the Claimant could perform his past-relevant work as a section chief when the ALJ failed to consider the testimony of the VE. Doc. No. 34 at 19-23. More specifically, Claimant argues that the ALJ erred by failing to consider the VE's testimony that an individual, who was taking high levels of narcotic pain medication due to his impairment, could not pass a mandatory drug test and could not be hired for the position of section chief. Doc. No. 34 at 23.[3] While the Claimant cites to no legal authority in support of his argument, for the reasons set forth below, the Court finds that it is meritorious.

Throughout the relevant time period, Claimant has been prescribed Percocet, morphine sulfate and Oxycodone, with Oxycodone and Percocet to be taken in conjunction with each other as many as three times per day. *See* R. 1051, 1054, 1077, 1091, 1093-1095, 1097-1098, 1101, 1105, 1107-1108, 1110, 1112, 1128, 1131, 1144, 1148, 1153, 1161, 1197, 1200-1201, 1203, 1206, 1209, 1211, 1214, 1216, 1218, 1220, 1224-1225, 1248, 1273-1274.

At the hearing, after the VE testified that a hypothetical individual with Claimant's age, education, and residual functional capacity assessment ("RFC") could perform Claimant's past-relevant work as a section chief (R. 73-74), the following exchange occurred between the VE and Claimant's attorney:

---

[3] In this section of the joint memorandum, Claimant also argues that the ALJ erred by failing to include all of Claimant's alleged subjective limitations in the ALJ's residual functional capacity assessment and in the hypothetical question to the VE, but the Claimant ignores the ALJ's credibility findings, which addresses those same limitations. Doc. No. 34 at 19-22. Claimant challenges the ALJ's credibility determination in a separate section of the joint memorandum. Doc. No. 34 at 34-36.

> Q. Would there be any drug testing or prohibition against drug use in that particular occupation?
>
> A. In my experience, in order to be hired, there would generally [be] a drug test done.
>
> Q. Okay. And in your experience, if they knew that there was a prescription that actually was given, even if it was was high-level narcotic, would they still want to hire that applicant?
>
> A. In my experience, no.

R. 75. Thus, the VE testified that there would generally be a drug test performed for work as a section chief and an individual taking a high-level narcotic medication would not be hired. R. 75.

In the decision, the ALJ finds, at step-four, that Claimant is capable of performing his past-relevant work as section chief as that work is generally performed in the national economy. R. 25. The ALJ states:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the [ALJ] finds that the claimant is able to perform it as generally performed. The [ALJ] asked the [VE] to consider an individual with the claimant's age, education, and past work who could perform light work by lifting and carrying twenty pounds occasionally, ten pounds frequently; sit of six hours out of an eight hour work day, and stand and walk for two hours out of an eight hour workday. This person could occasionally use his lower extremities for pushing and pulling. The claimant had to avoid even moderate exposure to unprotected heights and dangerous equipment. Could this person perform the claimant's past work? The [VE] answered yes, the claimant could perform his past work as a section chief.

R. 25-26. Based upon the above-stated findings at step-four, the ALJ finds that the Claimant is not disabled. R. 26. However, at no point does the ALJ address the VE's testimony set forth above, which indicates that drug testing would be required for the job of section chief and an individual, like the Claimant, who was taking a high-level narcotic, would not be hired. R. 25-26.

The Court has not been able to find, and the parties have not provided, an Eleventh Circuit opinion addressing whether an ALJ is required to consider a claimant's ability to pass a drug test at step-four. In *Berry v. Astrue*, 622 F.3d 1228, 1230-34 (9th Cir. 2010), the Ninth Circuit held that the ALJ there erred by concluding that Berry's ability to pass a drug test as a mandatory condition of his past-relevant work was irrelevant to the disability determination. *Id*. at 1230.

Berry's past-relevant work was as a courier driver. *Id*. at 1230. At the hearing, Berry argued that he could not perform that work because he could not pass the mandatory drug testing requirement due to his prescribed pain medication. *Id*. The ALJ noted that drug testing was not listed a requirement for the job in the Dictionary of Occupational Titles and, therefore, the ALJ refused to permit Berry to introduce evidence that drug testing was a mandatory condition of the job, finding it irrelevant to the ALJ's analysis. *Id*. "Nor did the ALJ consider whether, if such a requirement exists, Berry was physically capable of meeting it." *Id*.

The Ninth Circuit held:

> If it is true, as Berry offered to prove, that Berry's prescribed medication regime to treat his potentially disabling condition would categorically prevent him from obtaining work as a courier by rendering him physically unable to pass a drug test that is mandatory across employers, then he cannot meaningfully be said to be capable of working as a courier. A mandatory requirement that employers cannot hire people with a certain level of pain medication in their blood is in essence a physical demand of the job. The ALJ was not permitted to ignore the possibility that such a mandatory requirement exists, in the face of Berry's offer of proof, merely because no such physical demand appears in the DOT.

*Berry*, 622 F.3d at 1232. Thus, the Ninth Circuit found that if a claimant can offer proof that a mandatory drug testing requirement exists and that the claimant would be physically unable to pass said test due to his prescribed medication regimen, then that drug testing requirement is "in essence a physical demand of the job," which the ALJ may not ignore. *Id*.

The Ninth Circuit continued:

> A mandatory drug testing requirement of the kind Berry alleges is not a mere hiring practice that is irrelevant to the determination of disability.  Under 42 U.S.C. § 423(d)(2)(A), an individual is disabled "only if his physical or mental impairment [is] of such severity that he is ... unable to do his previous work [or] engage in any other kind of substantial gainful work ... regardless of ... whether he would be hired if he applied for work."  <u>The language excluding consideration of whether a claimant who sought work would in fact be hired cannot be construed to include a hiring practice that is directly tied to the claimant's disability.  Otherwise, the limiting language would defeat the entire statutory scheme, which provides benefits for individuals who cannot work due to a disability</u>. This understanding of the statute—as intended to exclude from consideration "employer preferences" not directly related to a "medically determinable physical or mental impairment"—is consistent with its legislative purpose. *See* S.Rep. No. 90–744, at 41 (1967), reprinted in 1967 U.S.C.C.A.N. 2834, 2882; *cf. Sorenson v. Weinberger*, 514 F.2d 1112, 1117–19 (9th Cir. 1975) (per curiam) (interpreting the amended definition of disability and affirming denial of disability benefits to a claimant for whom substantial evidence supported the determination that he was physically and mentally able to work even though he "ha[d] not been released by medical doctors to return to work").

*Berry*, 622 F.3d at 1232 (emphasis added).  Thus, the Court noted that while 42 U.S.C. § 423(d)(2)(A) excludes consideration of whether a claimant would actually be hired for a particular job, that statutory provision "cannot be construed to include a hiring practice that is directly tied to the claimant's disability."  *Berry*, 622 F.3d at 1232.

In this case, Claimant takes multiple narcotic medications, multiple times, on a daily basis. *See supra* p. 7.  The VE testified that employers would require drug testing for Claimant's past-relevant work as a section chief.  R. 75.  The VE further testified that an individual, who could not pass said test, would not be hired.  R. 75.  Thus, there is evidence in the record that drug testing is required for Claimant's past-relevant work, he takes medications that would likely cause him to fail a drug test and, therefore, he cannot perform his past-relevant work.  The parties have not referenced any other record evidence bearing on that issue.  However, the ALJ failed to address the evidence described above.  R. 25-26.

At step-four, while the VE testified that a hypothetical individual with Claimant's residual functional capacity assessment, age, education, and vocational profile could perform Claimant's past-relevant work as a section chief (R. 73), the VE also testified that an individual, like Claimant, would be required to pass a drug test and would not be hired if they were prescribed a high-level narcotic.  R. 74-75.  Thus, the VE's testimony establishes a conflict in the evidence at step-four.  It is the ALJ's responsibility, not the Court's, to resolve conflicts in the evidence.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004*); King v. Comm'r of Soc. Sec.*, No. 8:10-cv-2390-T-27EAJ, 2012 WL 243382, at *14 (M.D. Fla. Jan. 6, 2012) *report and recommendation* adopted *King v. Comm'r of Soc. Sec.*, No. 8:10-cv-2930-T-27EAJ, 2012 WL 243567, at *1 (M.D. Fla. Jan. 25, 2010)  Here, the ALJ's decision fails to address how the ALJ resolved the above-stated conflict at step-four.  R. 25-26.  The Court is persuaded by *Berry* and finds that without addressing the above-stated evidence, the ALJ's finding at step-four is not supported by substantial evidence.  Accordingly, the case must be **REVERSED and REMANDED** for further proceedings.[4]

## IV.  CONCLUSION.

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and

2. The Clerk is directed to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

**DONE** and **ORDERED** in Orlando, Florida on January 6, 2016.

---

[4] As set forth above (*see supra* n.1), Claimant also argues that the ALJ's credibility determination is not supported by substantial evidence.  Doc. No. 34 at 34-36.  However, because the case must be remanded based on the above-stated error, it is unnecessary to address that argument.  *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand, the ALJ must reassess the entire record).

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Valencia Jarvis
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Office
500 East Broward Blvd
Suite 1000, 10th Floor
Fort Lauderdale, FL 33394